UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| ELAINE WANG, | : |
| | : |
| Plaintiff, | : Civil Action No. 23-cv-02529 |
| | : |
| v. | : **COMPLAINT FOR VIOLATIONS OF** |
| | : **SECTIONS 14(a) AND 20(a) OF THE** |
| TRAVELCENTERS OF AMERICA INC., | : **SECURITIES EXCHANGE ACT OF** |
| BARBARA D. GILMORE, LISA HARRIS | : **1934** |
| JONES, JOSEPH L. MOREA, RAJAN | : |
| PENKAR, ELENA POPTODOROVA, | : **JURY TRIAL DEMANDED** |
| ADAM D. PORTNOY, and JONATHAN M. | : |
| PERTCHIK, | : |
| | : |
| Defendants. | : |

---

Elaine Wang ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against TravelCenters of America Inc. ("TravelCenters" or the "Company") and the members of TravelCenters's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed acquisition of TravelCenters by affiliates of BP p.l.c. (collectively, "BP").

2. Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A

(the "Proxy Statement") to be filed on March 22, 2023 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders. The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Bluestar RTM Inc. ("Merger Sub"), a wholly-owned direct subsidiary of BP Products North America Inc. ("Parent"), will merge with and into TravelCenters, with TravelCenters surviving the merger and becoming an indirect wholly-owned subsidiary of Parent (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into on February 15, 2023 (the "Merger Agreement"), each TravelCenters stockholder will receive $86.00 in cash (the "Merger Consideration") for each TravelCenters share owned.

3. As discussed below, Defendants have asked TravelCenters's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisor, Citigroup Global Markets Inc. ("Citigroup"), in support of its fairness opinion.

4. It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to TravelCenters's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because the Company's stock trades on the NASDAQ Stock Exchange, headquartered in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, an owner of TravelCenters stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant Barbara D. Gilmore has served as a member of the Board since 2007 and is the Lead Independent Director.

11. Individual Defendant Lisa Harris Jones has served as a member of the Board since 2013.

12. Individual Defendant Joseph L. Morea has served as a member of the Board since 2015.

13. Individual Defendant Rajan Penkar has served as a member of the Board since 2020.

14. Individual Defendant Elena Poptodorova has served as a member of the Board since 2020.

15. Individual Defendant Adam D. Portnoy has served as a member of the Board since 2018 and is the Chairman of the Board.

16. Individual Defendant Jonathan M. Pertchik has served as a member of the Board since 2019 and is the Company's Chief Executive Officer.

17. Defendant TravelCenters is a company incorporated under the laws of the State of Maryland and maintains its principal offices at 24601 Center Ridge Road, Westlake, OH 44145. The Company's stock trades on the NASDAQ Global Select Market under the symbol "TA."

18. The defendants identified in paragraphs 10-16 are collectively referred to as the "Individual Defendants" or the "Board."

19. The defendants identified in paragraphs 10-17 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A.    The Proposed Transaction**

20. TravelCenters operates travel centers, truck service facilities, and restaurants in the United States and Canada. The Company's travel centers offer various products and services, including diesel fuel and gasoline, as well as nonfuel products and services, such as a range of truck repair and maintenance services, diesel exhaust fluids, full service restaurants, quick service restaurants, and various customer amenities. Its travel stores offer general merchandise, including electronics, oil and additives, hardware and tools, clothing, and cab and bunk supplies; convenience products; grocery items; and gifts and regional souvenirs. In addition, the Company operates parking spaces under the Reserve-It brand name. It operates restaurants, as well as under the TravelCenters of America, TA, TA Express, Petro Stopping Centers, and Petro brand names

in the United States and the province of Ontario, Canada. It also operates truck service facilities under the TA Truck Service brand name. The Company's full and quick service restaurants are operated under the Iron Skillet, Country Pride, IHOP, Black Bear Diner, Fuddruckers, Bob Evans, Popeye's Chicken & Biscuits, Subway, Burger King, Taco Bell, Pizza Hut, Dunkin' and Starbuck's Coffee brands. TravelCenters was founded in 1972 and is based in Westlake, Ohio.

21. On February 16, 2023, the Company announced the Proposed Transaction:

> WESTLAKE, Ohio--(BUSINESS WIRE)-- TravelCenters of America Inc. (Nasdaq: TA), the nationwide operator and franchisor of the TA, Petro Stopping Centers and TA Express travel center brands, today announced that it has entered into a merger agreement with BP p.l.c. (NYSE: BP), pursuant to which BP will acquire all of the outstanding shares of TA common stock for $86.00 per share in cash. The sale price represents an 84% premium to the average trading price of the 30 days ended February 15, 2023 of $46.68. The total equity value is approximately $1.3 billion.
>
> Jonathan M. Pertchik, TA's Chief Executive Officer, made the following statement:
>
> "Today's announcement that BP is acquiring TA for $86 per share is a result of the successful implementation of our turnaround and strategic plans. We have improved our core travel center business, expanded our network, launched eTA to prepare for the future of alternative fuels and improved our operating and financial results, none of which we could have accomplished without the hard work and dedication of our employees at every level."
>
> Today's announcement is the culmination of a comprehensive process by TA's Board. Following the implementation of TA's turnaround plan and several quarters of improved operating performance, TA received unsolicited interest to acquire the Company. In response, TA's Board hired financial and legal advisors as part of a formal process to consider a potential sale of the Company. This process ultimately included competitive rounds of bidding from potential buyers that resulted in the transaction announced today.
>
> A condition of the sale is the approval by shareholders who own a majority of TA's shares outstanding. Service Properties Trust

>(Nasdaq: SVC), which owns 7.8% of TA's shares outstanding, and The RMR Group (Nasdaq: RMR), which owns 4.1% of TA's shares outstanding, both have agreed to vote their shares in favor of the sale. At the closing of the transaction, TA will terminate its management agreement with RMR pursuant to the terms of the agreement and pay a termination fee to RMR that is currently estimated to be approximately $44 million. Subject to shareholder and regulatory approval, the parties are targeting closing the acquisition by mid-year 2023.
>
>The transaction was unanimously approved by the TA Board of Directors. Citigroup acted as exclusive financial advisor to TA and Ropes & Gray as TA's legal advisor in connection with the transaction.

*  *  *

*TravelCenters of America to be Acquired by BP for $86.00 Per Share, or Approximately $1.3 Billion*, TRAVELCENTERS OF AMERICA (Feb. 16, 2023), https://investors.ta-petro.com/investors/press-releases/press-release-details/2023/TravelCenters-of-America-to-be-Acquired-by-BP-for-86.00-Per-Share-or-Approximately-1.3-Billion/default.aspx.

22. The Board has unanimously agreed to the Proposed Transaction. It is therefore imperative that TravelCenters's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.     The Materially Incomplete and Misleading Proxy Statement**

23. On March 22, 2023, TravelCenters filed the Proxy Statement with the SEC in connection with the Proposed Transaction. The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or

6

omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

24. The Proxy Statement fails to provide material information concerning financial projections by TravelCenters management and relied upon by Citigroup in its analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and Citigroup to aid them in forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that TravelCenters management provided to the Board and Citigroup. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-03 (Del. Ch. 2007).

25. For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: 4-Wall EBITDAR, 4-Wall EBITDA, EBITDA, EBIT, and Pre-Tax Book Income, but fails to provide line items used to calculate these metrics and/or a reconciliation of the non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

26. When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

27. The SEC has noted that:

> [C]ompanies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

28. Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Proxy Statement not misleading.

29. Further, the Proxy Statement fails to disclose unlevered free cash flows that the Company were forecasted to generate during the fiscal years ending December 31, 2023 through

---

[1] U.S. Securities and Exchange Commission, *Non-GAAP Financial Measures*, last updated Apr. 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

December 31, 2027, which Citigroup calculated for the purposes of conducting its Discounted Cash Flow Analysis.

*Omissions and/or Material Misrepresentations Concerning Citigroup's Financial Analyses*

30. With respect to Citigroup's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the inputs and assumptions underlying the discount rates ranging from 12.3% to 13.9%; (ii) the weighted cost of capital of the Company; (iii) the range of terminal values of TravelCenters; (iv) the inputs and assumptions underlying the use of perpetuity growth rates ranging from (1.0)% to 1.0%; (v) TravelCenters's present value of net operating losses as of December 31, 2022; (vi) the Company's unlevered free cash flows that the Company was forecasted to generate during the fiscal years ending December 31, 2023 through December 2027; (vii) the Company's net debt as of December 31, 2022; and (viii) the number of fully-diluted outstanding shares of TravelCenters common stock.

31. With respect to Citigroup's *Selected Public Companies Analysis*, the Proxy Statement fails to disclose the financial metrics and multiples for each company selected by Citigroup for the analysis.

32. With respect to Citigroup's *Selected Precedent Transactions Analysis*, the Proxy Statement fails to disclose: (i) the financial metrics and multiples for each transaction selected by Citigroup for the analysis; and (ii) the inputs and assumptions underlying the reference range of 3.7x to 6.0x.

33. With respect to Citigroup's selected transaction analysis for the "C-Store" companies for selected transactions in the C-Store industry, the Proxy Statement fails to disclose: (i) the transactions selected for the analysis; (ii) the date of announcement for each transaction selected; and (iii) the financial metrics and multiples for each transaction selected for the analysis.

34. With respect to Citigroup's premia paid analysis, the Proxy Statement fails to disclose: (i) the transactions selected and analyzed by Citigroup for the analysis; and (ii) the premia paid in these transactions.

35. With respect to Citigroup's analysis of Wall Street research analysts' price targets for TravelCenters, the Proxy Statement fails to disclose: (i) the research analysts observed; and (ii) the price targets published by the research analysts observed.

36. In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

37. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

38. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

39. Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

40. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders, although they could have done so without extraordinary effort.

41. Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

42. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate

remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

43. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

44. The Individual Defendants acted as controlling persons of TravelCenters within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of TravelCenters, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of TravelCenters, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

45. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

46. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of TravelCenters, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy Statement at issue

contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

47. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

48. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

49. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

50. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: March 24, 2023

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

/s/ *Benjamin Y. Kaufman*
Benjamin Y. Kaufman
Rourke C. Donahue
270 Madison Avenue
New York, NY 10016
Telephone: (212) 545-4650
Fax: (212) 686-0114
kaufman@whafh.com
donahue@whafh.com

*Attorneys for Plaintiff*